Good morning, Your Honors. My name is David Ness. I am with the Federal Defenders of Montana. Although I am not the lawyer that actually completed the briefing, I am standing in for oral argument today for Mr. Donahoe. These two cases have been consolidated and involve, as I see it, two primary issues. The first issue is the jurisdictional issue. These cases come up to this Court through an interlocutory appeal process, and so the first question that needs to be addressed is the Court's jurisdiction. The second question that needs to be addressed is more in the nature of statutory and constitutional interpretation, and that deals with the reach of Section 1118 U.S.C., Section 1153. We have submitted to the Court that this Court has jurisdiction over this interlocutory appeal under two mechanisms. One is either the collateral order doctrine, the second being mandamus. Under both doctrines, under both methodologies, it appears as though this Court does, in fact, have jurisdiction, although it appears to me that the argument based upon the writ of mandamus is probably the stronger. One of the things that the government has argued is that because this is an issue, because this comes up as an issue involving a district court's denial of a motion to dismiss, that this Court, under the Layton decision, should not have jurisdiction. We, of course, have taken issue with that and have cited to the Court the Midland Asphalt case. In reviewing this case, it appears that under the collateral order doctrine, we can and, in fact, we have satisfied each of the three elements. First, the district court conclusively determined the disputed question. The district court conclusively determined that the Section 1153 does not have as an element that the victim be an Indian person. That issue has been decided. Second, the issue is completely separate from the merits in that this isn't really a question going to guilt or innocence. And, in fact, it appears as though the defendant, if, in fact, the Court would agree with us, could be charged under Section 1152 or even charged by the tribe. And third, it's clear that the issue is effectively unreviewable through a mechanism of direct appeal. That is, if the defendant were to go to trial not guilty, there's no way to secure his right to a valid indictment and a valid grand jury proceeding. And that is because the grand jury was not presented with the issue of whether or not a person charged under the auspices of Section 1153 needs to have presented to the grand jury the fact that the alleged victim was, in fact, an Indian person. With regard to the... Is there any question factually as to whether or not the alleged victim was, in fact, an Indian? My premise is that he was not. That's the reason this issue is here. Right. No, I don't think that there is any question. With respect to mandamus, the factors involved in mandamus effectively, in some ways, overlap and track the factors that are involved with the collateral order doctrine. But one of the things that I think needs to be pointed out in this case, because it is one of the factors involving this court's jurisdiction under mandamus, is whether or not this is a new and important question. It is certainly important. This case, because of its nature, involves not only a mere statutory interpretation, but also the broader constitutional implications dealing with the Federal Government's relationship with the various Indian tribes and their members. And so for those reasons, as well as the fact that it also involves the validity of the grand jury proceedings, it is, in fact, an important question. And it is a question that has effectively arose in light of more recent decisions of this Court, such as the Feral D decision, the Juvenile Mail decision, and most particularly the James decision. Now, as for the merits, the question is, is whether or not the Government has the merits. And I think that's a good question, because it goes to the question whether the race or ethnicity of a party is an element of the crime. Yes. That also happens to be the merits, in a sense. Except I would distinguish it, because in this case, what we're talking about more is the validity of the grand jury proceedings. Yes. And, in fact, the validity of whether or not there was probable cause to even indict. The invalidity would be because an element of the crime was not included in the indictment. Right. And so if one has a constitutional right for a grand jury to find probable cause before indictment, and the grand jury necessarily does not find probable cause because they don't find all of the elements of the crime and, in fact, weren't presented with all of the elements of the crime, then what we're talking about is more a denial of the defendant's right to valid grand jury proceedings. So your argument is that we have jurisdiction to determine whether you are correct or not in concluding whether it comes under the – which statute it comes under, the 52 or the 53? Yes. More particularly, whether or not he's been 1153, it applies to this case. Yes. Now, this case, getting to the merits of the case, this case involves two statutes, Section 1152 and Section 1153. As pointed out in the brief, Section 1153 deals with whether or not the issue under Section 1153, rather, deals with whether or not the government can validly charge under that statute if the victim is not an Indian person. In the briefs, it's been argued extensively the statutory interpretation issue and the fact that the actual language of the statute, when it speaks of a victim being an Indian or any other person, the clause, any other person, necessarily has to be viewed as redundant because, obviously, Indian persons are persons, and so – There are institutions other than persons. There are, for example, government agencies. Right. And doesn't our determination in Errol suggest that there may be a meaning to any other person, that is, any other human being, but not necessarily another corporate body or governmental unit? I don't know, Your Honor, that I could take the holding of Errol D. and limit it merely to that extent. Errol D. did hold that a governmental agency is not a person, and that was the holding of Errol D., but I don't think that there's anything to suggest, either in the legislative history or in the Crow Dog decision, for instance, in the cases leading up to Errol D. that would suggest that that language was added merely to provide a distinction between, say, corporations, governmental entities, and national persons. But it does suggest that there may be a meaning so that – One argument, as I understood it, is that this phrase can't mean anything. It doesn't – What does any other person refer to? Errol D. says that governmental entities are out of the ambit. Perhaps human beings other than Indians qualify as any other persons. There is a distinction drawn, but the distinction is drawn not between Indians and other human beings, but between human beings and non-human entities. And I think the way I would view it is that Errol D. made the more narrow decision to say that incorporation or a governmental entity is not to be included within the ambit of Section 1153. And now we're looking at a step beyond Errol D. to the broader question of whether or not the statute is limited solely to cases involving Native American victims as opposed to cases involving Native American and other – and victims of other races. Counsel, what do we do with the Henry case? In the Henry case, this Court held, it wasn't victim, that a prosecution of an Indian against a non-Indian victim must be brought pursuant to 1153. Isn't that the law of the circuit? Well, of course, there's been cases subsequent to Henry, in particular the James case. The James case addressed this question? No, the James case did not address this question in particular. But the James case – We still have the Henry case, though. We still have the Henry case, but I think that the Henry case conflicts with not only subsequent cases, including James and some aspects of Errol D., but also conflicts with some of this Court's earlier cases, such as the Acuna case. You're really saying that the James dictum conflicts with the holding in Henry, but we're bound by the law of the circuit, aren't we? Yes. This panel can't overrule Henry. Right. The James dictum cannot overrule Henry. I would agree with that. So this is a matter, then, for an in-bank Court? And that was one of the things I suggested in my letter to the Court. Unless anybody has anything further, I will reserve the last 30 seconds I have. Thank you. Thank you. If it pleases the Court, my name is Klaus Richter. I'm an assistant with the U.S. Attorney's Office in Montana. I was involved in the Byrd case. Laurie Harper was involved in the Crawford case. Both cases arising off of Indian reservations, and both cases involving the same defense attorney, appellant attorney, and basically involving the same issues, so the two cases were combined. And I'm representing Ms. Harper this morning. Basically, the primary issue that is raised by appellant in this case is he alleged in the lower court that the United States needs to allege and I guess ultimately prove for a charge on 1153 that the victim is an Indian person. So it's kind of jurisdictional. That argument basically, Your Honors, flies in the face of established case law, flies in the face of congressional history, flies in the face of, as I said, established case law. They do cite a couple of cases that came along after the Henry case, which had dicta to that effect. And the unfortunate thing with some of those cases is the James case that they mentioned. The court was not concerned with this particular issue, whether the victim needs to be an Indian or non-Indian person on 1153. In most of those cases that they cite and that have made some comments to that effect, the question was either the indictment was insufficient because it didn't allege any ethnicity, and also in most of those cases, the Acuna case, the Henry case, I'm sorry, the James case, both of the defendant and the victim were, in fact, Indian persons. So those courts did not need to address it. So unfortunately, in one of those cases, there's a comment, well, on 1153, it needs to be alleged the defendant and victim need to be Indian persons. It didn't address the issue at all what exactly does the phrase for any other person or other person mean. According to cases starting long, long ago and, again, settled, I respectfully submit, in the Ninth Circuit, the Henry case, if a charge is brought under the Major Crimes Act, yes, the defendant needs to be an Indian person. The United States, the government, needs to allege such within the indictment. But because of the statutory language and because of case law following that, the ethnicity of the victim does not need to be alleged, does not need to be proven. It can be either one. It can be an Indian person or a non-Indian person. And that's basically what the holding in the Henry case was. The one reason the Henry case ended up saying, well, this needs to be charged under 1153, is because it was a major crime. It's because both the defendant and the victim were Indian persons, so it could not be charged under 1152, the other statute. It had to be because it was a major crime and because both of the parties were Indian persons. It had to be charged under 1153. Briefly, and this has been discussed at length in these briefs and the letter briefs, the interaction between 1152 and 1153 needs to be briefly considered. The first statute, 1152, sometimes that's called the Federal Enclave Act, the General Crimes Act, and so on. It was passed long before the Major Crimes Act. It ultimately had, by the time we get around to the ex parte Crow case, it had two exceptions in there. That section does not apply to cases where the defendant and the victim are both Indian persons, does not apply to cases where the defendant has been punished by the tribal court. So because of that statutory language and because of the Supreme Court case, the Major Crimes Act was passed basically allowing or taking back federal jurisdiction over those cases. And, again, that's explained clearly in the Henry case. It explains clearly in following cases in the Ninth Circuit, too, the two cases that the appellant mentions, the male juvenile case, Pierre, and then the subsequent juvenile case, Earl D., really weren't concerned with that particular issue. But even in those cases, they make mention of 1153 applying to any other person. They say that a couple of times in the male juvenile case. They say that also where they explain Henry in the Earl D. case, the Major Crimes Act applies to non-Indian human persons. That term is used right in one of the footnotes on page 1165. Your Honors, the motion by defense counsel or by defendant in the lower court was properly denied by the court. This is not – it's been briefed, so I don't want to take up too much time. This is not a matter that should come under the collateral order doctrine. It's not a matter that issue – where mandamus should be issued or writ of mandamus. Basically, there's an appeal right present. And according to the cases we cited, anything that affects the defendant, that issue can be preserved for appeal. So, Your Honors, the question as to whether the ethnicity of the victim under a charge under 1153 needs to be alleged, I respectfully submit it does not. It's been – and I'm repeating myself, but it's been decided by statutory language and by case law. If you are correct that we lack jurisdiction, then you're asking us to dismiss and we don't get to the merits. That's correct, Your Honor. It's one of those cases. It does not fall, as has been briefed, under either of those doctrines. And, yes, I guess that's the unfortunate part. It would be good to get a decision. However – and I'm arguing against it. I personally would like the decision. But pursuant to case law, it's not right for the appeal. Unless there's any other questions, I don't have any further comments. Thank you very much. Mr. Nass, you're actually 30 seconds over rather than under, but take the 30 seconds for something you want to focus. I have no other comments to add unless the Court would have any questions. Thank you. Thank you. The U.S. v. Byrd and U.S. v. Crawford are submitted.
judges: Browning, Alarcon, Clifton